**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| CLEMENTE GALVEZ, *et al.*, | : |
| Plaintiffs, | : |
| vs. | :   Case No. ELH-17-CV-2901 |
| MO'S FISHERMAN EXCHANGE, INC., | : |
| et al., | |
| | : |
| Defendants. | |

...oooOooo...

## **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER THE FLSA**

Here we go again.  Without providing any explanation as to why Plaintiffs failed to join the previous collective action, *Rivera v. Mo's Fisherman Exchange*, Case. No. 14-cv-1427-ELH ("*Rivera*"), which is still pending before this Court, Plaintiffs seek to pursue a duplicative FLSA collective action against the exact same Defendants accused of the exact same state and federal wage law violations seeking the exact same remedies.  Moreover, Plaintiffs seek to create a class of potential plaintiffs comprised of more than 600 former and current Mo's employees – even though those same employees were previously notified of their right to join the *Rivera* lawsuit, but the vast majority chose not to do so.

Perhaps this is a further part of Plaintiffs' plan to bankrupt Mo's and cause more than a hundred employees to lose their jobs.  Perhaps this is the continuation of what is plainly a personal vendetta against Mr. Manocheh.  What is clear is that this lawsuit is simply a subterfuge for Plaintiffs – without any valid explanation – to directly circumvent this Court's previous Order setting limitations on the ability of current and former Mo's employees to pursue their claims against Mo's.  This Court should not countenance such outrageous and inequitable conduct, which has one purpose – to cause financial ruin to Defendants.

While the Fourth Circuit has never addressed this issue, numerous federal courts, addressing similar situations, have found that such "repeat litigation" while a similar collective action is still pending is inappropriate, unfair, prejudicial – and a waste of the court's resources. Those courts, concluding that such litigation undermines the purposes of the FLSA collective action provisions, have either refused to certify such collective actions or only ordered limited certifications in such situations (for instance, only allowing those employees who never did not previously receive notice of the first-filed action to opt-in to the second-filed collective action). Surely, if the Court allows Plaintiffs to proceed with a second collective action against Mo's, there will be a third collective action filed against the same Defendants alleging the same state and federal wage law violations after the opt-in period for this case expires.  As a matter of fundamental fairness and judicial discretion, Mo's should not be forced to expend extensive resources defending yet another collective action, simply because Plaintiffs failed for unknown reasons to exercise their right to opt into the *Rivera* case.  Plaintiffs have the right to pursue their cases individually, but they should not be rewarded for simply ignoring this Court's Order.

Moreover, if there is anything to be learned from Defendant's pending Motion for Decertification in *Rivera*, it is that the initial certification of the *Rivera* case created a legal quagmire – dozens of plaintiffs, working in various different jobs, in different locations, with different managers, being paid by different systems, bringing different claims with different factual bases seeking different remedies.  Now, Plaintiffs seek, in a legal rendition of *Groundhog Day*, to once again expand a discrete case involving four "back of the house" kitchen workers who were paid hourly, into a case involving "front of the house" servers, bartenders and busboys who were paid tips and would have completely different claims than Plaintiffs.  The employees that Plaintiffs seek to have included in their collective action are not similarly-situated to

Plaintiffs, and no single alleged violation applies to all Plaintiffs and putative class members. The end result of such a broad-based collective action – as proven by the *Rivera* case – would undoubtedly be myriad individualized liability determinations within and among the various employee classes – which is exactly the opposite of the efficient process envisioned by such collective actions.

## **STANDARD OF REVIEW**

In deciding whether to certify a collective action under the FLSA, courts generally follow a two-stage process. *See Syrja v. Westat, Inc.*, 756 F. Supp.2d 682, 686-87 (D. Md. 2010).  First, typically before discovery, the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated such that court-facilitated notice to the putative class members would be appropriate.  *Id.*  Second, typically following discovery, the court engaged in a more stringent inquiry to determine whether the plaintiff class is, in fact, similarly situated as required by Section 216 of the FLSA and renders a final decision as to the propriety of proceeding as a collective action.  *Id.*

While this Court has frequently granted conditional certification, it has also denied conditional certification on several occasions where plaintiffs failed to show through specific factual evidence that the employees are similarly-situated and that individualized inquiries into the circumstances of each plaintiff will not be needed.  *See Alderoty v. Maxim Healthcare Services, Inc.,* 2015 WL 5675527 at *6-8 (D. Md. Sept. 23, 2015) (Chuang, J.) (partially denying conditional certification); *Bouthner v. Cleveland Coast, Inc.,* 2012 WL 738578 (D. Md. Mar. 5, 2012) (Bennett, J.) (denying conditional certification); *Sryja*, 756 F. Supp.2d at 686 (denying conditional certification); *Archer v. Freedmont Mortgage Corp., et al.,* 12 CV 1099 (D. Md. 2012) (Russell, J.) (denying conditional certification).  As the federal court in the Southern

District of New York pointed out a few years ago, conditional certification is not automatic. *See Guillen v. Marshalls of MA, Inc.*, 750 F. Supp.2d 469, 480 (S.D.N.Y. 2010).

Moreover, as this Court has noted, "the Courts, as well as practicing attorneys, have a responsibility to avoid the stirring up of litigation through unwarranted solicitation. . . . Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995). To that extent, it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart,* 256 F. Supp.2d 941, 945 (W.D. Ark. 2003).

## ARGUMENT

**I.     This Court Should Not Permit Back-Door Entry Into A Collective Action Where Plaintiffs Failed To Join A Previously-Filed Lawsuit Involving The Same Defendants And The Same Claims Which Is Still Pending In The Same Court.**

All current and former Mo's hourly employees who worked for Mo's between June 2013 and July 2016 – including Plaintiffs – were sent written notices and given the opportunity to "opt-in" to the *Rivera* case. Dozens of those employees chose to do so. Plaintiffs inexplicably chose not to do so. Now, Plaintiffs wish to pursue their own legal claims in a separate collective action against the same Defendants alleging the same legal violations of state and federal law. While Plaintiffs should certainly be allowed to pursue their individual claims against Mo's, Plaintiffs should not be rewarded for ignoring this Court's previous opt-in deadline, nor should Defendants be punished by having to incur the tremendous costs of defending collective action litigation for a second time. Such an approach runs counter to one of the primary aims of the FLSA, which is to try to resolve as many employee claims in one action as possible, and such an

approach is highly prejudicial to Defendants, who will be forced once again to incur

extraordinary legal costs defending against claims that they have already been forced to address

in the *Rivera* case.

Several courts have recently addressed this exact issue and have either refused to certify

a second-filed collective action, or have placed substantial limits on which employees may

participate in any such second-filed collection action.  For example, in *Schucker v. Flower

Foods, Inc.*, 2017 U.S. Dist. LEXIS 136178 (S.D.N.Y. Aug. 24, 2017), the court denied a motion

for conditional certification of an FLSA collective action where the second-filed lawsuit

involved the same allegations against the same defendants seeking the same remedies by

employees who chose not to opt in to the first collective action.  In a long and detailed

discussion, the court noted that "there was no good reason for sending overlapping notices

inviting the same people to join two lawsuits" and that "duplicative FLSA collective actions

have the potential to undermine the interests of judicial economy by presenting overlapping

classes, multiple attempts at certification in two different courts and complicated settlement

negotiations."  *Id*. at * 12 (*citing Ortiz v. Panera Bread Co.*, 2011 WL 3353432, *2 (E.D. Va.

Aug. 2, 2011).

The court further pointed out that: "Plaintiffs contend that the FLSA does not prohibit

multiple collective actions.  The Court agrees, but that is not the issue raised by Defendants; the

sole question here is whether certification of a duplicative collective action is a prudent and

reasonable exercise of the Court's discretion.  It is not, and numerous courts have agreed.." *Id.*

at *16.  Finally, the court concluded that, "Plaintiffs are free to pursue their own individual

FLSA claims . . . But here, no purpose would be served by allowing the FLSA claims to be

proceed as a collective action considering the concurrent cases and the attendant increased

expense for Defendants, the risk of confusing potential collective members about their legal

options, the possibility of inconsistent rulings, and the waste of judicial resources." *Id.* at *18-

19.  *See also Brown v. Jacob Transporation, LLC*, 2017 U.S. Dist. LEXIS 218588, * 11-12 (D.

Nev. Sept. 28, 2017) (expressly adopting the reasoning set forth in *Schucker*, the court denied

plaintiffs' motion for conditional certification of FLSA collective action, noting: "I agree with

the New York court's reasoning and analysis and adopt them here. I find that certifying a second,

competing collective action would not be appropriate under these circumstances and would

undermine rather than serve the legitimate goals behind the collective action device: avoiding

multiplicity of duplicative suits and expediting the disposal of the actions through cut-off

dates.").

       A different district court in the Southern District of New York reached the same

conclusion, dismissing FLSA collective action claims where two similar lawsuits involving the

similar claims against the same defendants were pending across the bridge in federal court in

Brooklyn.  *See Thomas v. Apple-Metro, Inc.*, 2015 U.S. Dist. LEXIS 14574 (S.D.N.Y. Feb. 5,

2015).  Noting that a district court has "broad discretion to dismiss a lawsuit that is duplicative

of a prior action" the court held that "while Plaintiff's desire to litigate in their best interests is

commendable, judicial economy and fairness to all parties require dismissal of her collective

action claims.  There is simply no reason for this Court to decide nearly identical questions of

law and fact . . . with regard to the same requested relief, the same Defendants and the same

class of plaintiffs." *Id*. at 12-13.

       Likewise, in *McLeod v. Just Energy Marketing Corp.*, 2015 U.S. Dist. LEXIS 82685

(N.D. Ohio June 25, 2015), the court addressed a situation where several plaintiffs who chose

not to opt-in to an earlier lawsuit in the same court filed a second collective action in that court

which was nearly identical to the first collective action.  The court initially pointed out that it may "in its discretion, dismiss a duplicative FLSA collective action – that is, one that covers substantially the same claims as an earlier filed collective action.  Once again, this rule grows out of the Court's inherent ability to conserve judicial resources and promote the efficient disposition of cases.  This also promotes fairness to defendants, who should not have to litigate multiple collective actions regarding substantially the same conduct at the same time."  *Id.* at 12-13.  The court then dismissed the collective action claims, holding that "Plaintiffs had the opportunity to opt in to [the earlier filed collective action], and chose not to.  Numerous courts to have considered similar situations have decided that the earlier-filed collective action should be given priority."  *Id.* at 13-14.

A similar result was reached in *Greene v. H & R Block E. Enterprises, Inc.*, 727 F. Supp. 2d 1363 (S.D. Fla. 2010), where the court dismissed a second-filed collective action in circumstances nearly identical to the present case – the second-filed case involved the same legal claims and same defendants as in the first-filed case, and plaintiffs were seeking the same relief in the same federal district court in a lawsuit filed by the same attorneys.  *Id.* at 1364-65.  The court pointed out that plaintiffs in the second-filed case could have opted-in to the first-filed case, and that allowing them to pursue a second collective action case, or to have their case consolidated with the first-filed case would "have the unacceptable consequence of allowing additional conditional plaintiffs to join [the first-filed case] beyond this Court's mandated deadline for doing so.  The Court will not permit such back-door entry into a conditional class that has been closed after an appropriate notice period."  *Id.* at 1368.  Finally, the court pointed out that plaintiffs would not be left without any remedy because they "retain the ability to pursue individual action if they are so inclined."  *Id.*

Likewise, in *Medina v. Brothers Behrman Highway, Inc.*, 2015 U.S. Dist. LEXIS 80874 (E.D. La. June 12, 2015), the court denied a motion for conditional certification of a second-filed case concerning the same claims as set forth in the first-filed case in the same court.  Initially, the court noted that the proposed class in the second-filed case was the same as in the first-filed case, and that the plaintiff in the second-filed case could have opted into the first-filed case but chose not to do so.  *Id.* at * 8-9.  The court then held that "although the FLSA does not preclude plaintiff from maintaining an independent, individual action, plaintiff is not entitled to conditional certification of a class that is entirely duplicative of the conditionally certified class in [the first-filed case]."  *Id.* at * 9.  The court concluded that "to allow plaintiff to seek conditional certification under these circumstances would not only lead to likely confusion and judicial waste, but would also 'frustrate the underlying rationale for using the collective action mechanism.'" *Id.* at * 9-10 (*quoting In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 2008 WL 4712769 (N.D. Cal. Oct. 23, 2008).

In addition, in *Zulewski v. Hershey Co.*, 2012 U.S. Dist. LEXIS 49082 (N.D. Cal. April 6, 2012), the court addressed a similar situation, where a group of employees who either chose not to opt-in to the first-filed collective action or were hired after the expiration of the opt-in period, filed a second collective action setting forth the same allegations against the same defendant. Initially, the court noted that it had "considerable discretion in determining what manner of notice should be sent in a successive collective action." *Id.* at * 4 (*citing Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting that district courts have broad discretion in deciding whether to grant or deny certification and broad authority over notice in order to prevent misuse of such actions).  The court then concluded that "sending a second notice to former [employees] who received notice in [the prior case] but declined to join that collective

action would undercut the collective action mechanism.  Essentially, Plaintiffs' position is that [employees] who did not opt-in should be given further rounds of notice until they either all opt-in or the statute of limitations runs.  This approach seems inconsistent with one of the primary aims of the FLSA, which is to try and resolve as many employee claims in one action as possible." *Id.* at * 5-6.

The court further noted that to allow such employees to have a second bite at the apple would "provide a disincentive for employees to opt-in to a collective action; it could encourage them to adopt a wait and see approach to the litigation, secure in the belief they would get more rounds of notice if the initial plaintiffs prevail.  Successive notices would also engender confusion among those who do not wish to participate in a collective action." *Id.* at * 6. Ultimately, the court only allowed those persons who had not been sent an opt-in notice in the first collective action to opt in, as well as those persons who were current employees at the time of the original notice and were still current employees at the time of the second motion for collective action certification (because some of those individuals may not have opted-in to the initial lawsuit because they had only been employed for a short period of time and had little to gain by opting-in at that time). *Id.* at 8-9.

Finally, in *Castillo v. Taco Bell of America, LLC*, 960 F. Supp. 2d 401 (E.D.N.Y. 2013), the court addressed a situation where an employee chose not to opt-in to a collective action previously filed by the same attorneys in a different district court, and then chose to file a second collective action alleging the same legal claims against the same defendants.  Initially, the court noted that the underlying claims, parties sued and relief sought in the second-filed lawsuit were identical to the first-filed lawsuit, and thus the two lawsuits would be inherently duplicative. *Id.* at 404.  The court then determined that the certification of the second-filed lawsuit would be

inappropriate because of the fact that "it would be patently unfair to require Defendants to litigate the class issues here at the same time as those matters are being litigated in the first-filed action." *Id.* at 405. The court concluded that: "Defendants should not be required to send a second class notice to individuals who have already received such notice but have elected not to participate in [the first-filed lawsuit]." *Id. See also Andreas-Moses v. Hartford Fire Ins. Co.*, 2017 U.S. Dist. LEXIS 180420, * 13-14 (N.D.N.Y. Oct. 30, 2017) (denying conditional certification in second-filed collective action); *Ortiz v. Panera Bread Co.*, 2011 WL 3353432, *2 (E.D. Va. Aug. 2, 2011) (applying first-to-file rule in dismissing collective action claims that mirrored claims filed in previously-filed collective action in different court against same defendants setting forth similar claims); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457 at *2 (D.N.J. April 7, 2011) ("Because the previously filed action has been conditionally certified, plaintiff must choose between opting in to that action, or continuing independently with his own action here. Certification of a separate collective action is not available to plaintiff at this time."); *LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534 at *8 (E.D. Va. Oct. 2, 2012) ("To permit FLSA claims to proceed in this case as to plaintiff-employees would be duplicative and wasteful and would directly contravene the spirit and intent of the 'first to file' rule, particularly with regards to FLSA collective actions.").

Ultimately, "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [] activity." *Hoffman-La Roche Inv. v. Sperling*, 493 U.S. 165, 170 (1989). While this case may not present the traditional criteria required for application of the "first-to-file" rule, *i.e.* competing cases filed in two separate courts, the case presents the exact same concerns with regards to judicial efficiency, fairness to defendants and the risk of inconsistent results, and thus, for the reasons set forth

above, the Court should exercise its inherent discretion and reject Plaintiffs' attempts to evade

this Court's previous Order setting a deadline for Mo's employees and former employees to opt-

in to the *Rivera* case.  *See Tate-Small v. Saks Inc.*, 2012 U.S. Dist. LEXIS 76081, * 2 (S.D.N.Y.

May 31, 2012) (noting that the first-filed rule "is particularly appropriate in the context of

competing FLSA collective actions, which threaten to present overlapping classes, multiple

attempts at certification in two different courts, and complicated settlement discussions.").

## II.     Plaintiffs Are Not Similarly Situated To The Proposed Class, Nor Were Plaintiffs And The Proposed Class Subject To The Same Policies & Practices.

Plaintiffs propose that the Court certify a class that: 1) includes six different restaurants,

including four restaurants where no Plaintiff ever worked (two of which closed more than a year

ago); and 2) includes a broad class of employees, including servers, busboys, hostesses,

bartenders and cooks, who hold completely different jobs and are subject to different payment

policies than Plaintiffs, who all worked in the kitchen.  Specifically, Plaintiffs request that the

Court create a class encompassing "all current and former non-exempt hourly employees."

There is simply a complete dearth of evidence that any of these other employees, such as servers,

busboys, bartenders, hosts/hostesses and cooks, are similarly situated to Plaintiffs, nor is there

any evidence or even any allegation that any such employees have any desire to join a new

lawsuit.

Initially, it is important to note that Plaintiffs have failed to identify a single employee at

any restaurant besides Mo's Glen Burnie and Mo's Crab & Pasta who was allegedly subject to

the same alleged unlawful wage policies and practices as Plaintiffs.  In fact, nowhere do

Plaintiffs identify any current or former employees who have expressed any interest in joining

this collective action – which is hardly surprising, since all of the persons who Plaintiffs want to

provide notice to have previously received notice from Plaintiffs' law firm, Brown Goldstein & Levy, and chose not to opt-in to the *Rivera* lawsuit.

This Court has addressed similar issues and limited the scope of a proposed class in several similar cases. For instance, in *Camper v. Home Quality Management, Inc.*, 200 F.R.D. 516 (D. Md. 2000), the court limited the class to the facility where the plaintiffs worked, rather than the other nursing homes operated by defendants, even though there may have been consistent policies at all nursing homes, because plaintiffs failed to present any reliable factual testimony in their sworn declarations regarding the employees who worked at the other locations. Likewise, in *Faust v. Comcast Cable Communications Management, LLC*, 2011 WL 524421 at *15 (D. Md. Nov. 1, 2011), this Court limited the class notification to the company locations where plaintiffs worked noting that plaintiffs failed "to provide any concrete evidence demonstrating that [potential class members] in other call centers are similarly situated in so far as they too have been victims of a failed implementation of Comcast's policy prohibiting off the clock work." *See also Hens v. ClientLogic Operating Corp.*, 2006 WL 2795620 at *5 (W.D.N.Y. Sept. 26, 2006) (limiting class to employees at work locations where plaintiffs made a factual showing that the employees were similarly situated to plaintiffs).

Moreover, Plaintiffs do not even describe, mention or refer to a single server, bartender, busboy, host/hostess or cook who is not already part of the *Rivera* lawsuit in their exhibits to their Motion for Conditional Certification, much less provide evidence that such employees wish to join the collective action; yet, Plaintiffs request that the Court create a class that would include all such employees at all six Mo's restaurants. With absolutely no factual basis to support such an expansive class, the Court should deny Plaintiffs over broad and unsupported request. *See Camper v. Home Quality Management, Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (quoting

*D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995) (noting that plaintiff must make "a preliminary factual showing that a similarly situated group of potential plaintiffs exists").

Conditional certification is also inappropriate at this point because of the individualized factual and legal issues that predominate in this case.  The question of manageability of the proposed class of plaintiffs is an important question at the notice stage.  *See Bouthner v. Cleveland Construction, Inc.*, 2012 WL 738578 at *4 (D. Md. March 5, 2012).  *See also Syrja*, 756 F. Supp. 2d at 689; *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995).  This court has denied conditional certification where "adjudication on a class-wide basis would require a cumbersome, individualized analysis of each class members particular factual circumstances."  *Syrja*, 756 F. Supp. 2d at 689-70.

In this case, completely different payment policies and practices applied to the Plaintiffs, i.e. "back of the house" employees who worked in the kitchen, who were paid an hourly wage, than the busboys, servers and bartenders who worked in the "front of the house" and were paid by hourly wages and tips.  Plaintiffs have raised issues alleged unpaid overtime wages, but not tip credit/tip reporting policies or unlawful tip pool practices.  The fact that Plaintiffs have acknowledged that the employees that they seek to add to their lawsuit will be seeking different damages under different legal theories demonstrates how inappropriate collective action certification would be for this case.

This case is similar to *Lamb v. Singh Hospitality Group, Inc.*, 2013 WL 5502844 at *9-10 (E.D.N.Y. Sept. 30, 2013), where the court found that servers, busboys and bartenders were not similarly situated to cooks, dishwashers, expediters and hostesses, because there was no factual evidence demonstrating that they were subject to the same alleged wage violations.  *See also*

*Alderoty v. Maxim Healthcare Servs., Inc.*, 2015 WL 5675527 at *6-8 (D. Md. Sept. 23, 2015) (court refused to certify collective action that included both homecare workers and staffing recruiters because no declarations were presented by any staffing recruiters, and insufficient evidence was presented to show that staffing recruiters were treated the same as homecare workers).  To hold otherwise in this case "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

## <u>CONCLUSION</u>

What possible reason could there be to reward Plaintiffs for choosing not to opt-in to the *Rivera* case?  For ignoring this Court's opt-in deadline?  By allowing this case to go forward as a collective action, the Court will be forcing Defendants to spend enormous resources defending a case that has already been litigated, which takes away from the resources available to defend the *Rivera* case.  That would be unfair.  Individual lawsuits are less expensive to litigate and less difficult to settle; collective actions are virtually impossible to settle, because of the enormous costs.  There is simply no reason that Plaintiffs need to move forward with a collective action, rather than individual lawsuits, particularly where they have failed to identify any prospective opt-in plaintiffs who have expressed interest in joining this new lawsuit.

WHEREFORE, Defendants request that the Court deny Plaintiffs' Motion for Conditional Certification and to Facilitate Notice Under the Fair Labor Standards Act, or alternatively, a) limit the persons who are allowed to opt-in to the lawsuit to those persons who did not previously receive notice of the *Rivera* lawsuit; and b) limit the scope of the collective action certification to dishwashers, cooks and food prep workers at Mo's Crab & Pasta and Mo's Glen Burnie.

Dated: March 28, 2018                                        Respectfully submitted,

_____/s/_____
Andrew M. Dansicker (Bar # 11765)
D. H. Andreas Lundstedt (Bar # 28620)
Law Office of Andrew M. Dansicker, LLC
Executive Plaza II, Suite 705
11350 McCormick Road
Hunt Valley, Maryland 21031

adansicker@dansickerlaw.com
andreas.lundstedt@gmail.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

Defendants hereby certify that on March 28, 2018, a copy of the foregoing Defendants'

Opposition to Plaintiffs' Motion for Conditional Certification and to Facilitate Notice Under the

Fair Labor Standards Act was served electronically on the following counsel for Plaintiffs:

Andrew D. Freeman, Esq.
Brooke E. Lierman, Esq.
Jessica P. Weber, Esq.
Brown Goldstein & Levy LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202

Sally Dworak-Fisher, Esq.
Monisha Cherayil, Esq.
Public Justice Center
One North Charles Street, Suite 200
Baltimore, Maryland 21201


_____/s/_____
Andrew M. Dansicker